UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

| | | |
|---|---|---|
| VICTORY LEDGERWOOD F/K/A GAIL LEDGERWOOD, | : | **MEMORANDUM DECISION AND ORDER** |
| | : | |
| Plaintiff, | : | |
| | : | **15 Civ. 1944 (BMC)** |
| - against - | : | |
| | : | |
| OCWEN LOAN SERVICING LLC, ET AL., | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff *pro se* brings this action to challenge alleged violations of law surrounding a residential mortgage loan that she obtained.  These kind of claims are more typically asserted as defenses or counterclaims in mortgage foreclosure actions, but plaintiff has exercised her right in this Court to assert federal statutory claims under the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601 *et seq.*, the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and the Fair Credit Reporting Act, 15 U.S.C. § 1681, together with state law claims under this Court's supplemental jurisdiction, see 28 U.S.C. § 1967.

Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) based on statutes of limitation and pleading deficiencies.  Defendants' motion is granted as to plaintiff's federal claims, and I decline to exercise supplemental jurisdiction over plaintiff's state law claims.

**BACKGROUND**

Plaintiff's loan, for $293,600.00, closed on September 14, 2006. New Century Mortgage Corporation was the originating lender, and the documents identified plaintiff and Jim L. Williams as the borrowers. Shortly before commencement of this action, Williams and plaintiff executed an assignment and assumption agreement, assigning Williams' interest to plaintiff.

Pursuant to a Pooling and Servicing Agreement ("PSA"), the Deutsche Bank National Trust Company, Trustee for Securitized Asset Backed Receivables LLC 2007-NC1 Trust (the "Trust"), was established January 1, 2007. After the transaction closed, the loan and note were transferred to the Trust. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") was the mortgagee of record and nominee for New Century. On July 25, 2014, MERS assigned the mortgage to the Trust. Defendant Ocwen Loan Servicing LLC is the servicer of the Note, Mortgage, and Loan.

The complaint contains a section entitled "General Allegations." It is prolix, but in essence, it asserts that none of defendants have standing to enforce the loan or foreclose on the mortgage. A recurrent theme through it and the substantive counts is that defendants failed to disclose to plaintiff that her loan was going to be securitized. Further, because the loan was not allegedly securitized in accordance with the PSA, plaintiff alleges that defendants cannot attempt to foreclose on the property.

The substantive counts are more concise, perhaps too concise, as plaintiff's theory is not always clear. They have been augmented by plaintiff's opposition to defendant's motion to dismiss. I am reading these together as constituting plaintiff's claims. Count I alleges that defendant Ocwen violated the Real Estate Settlement and Procedures Act ("RESPA") by untimely posting plaintiff's monthly mortgage payment and then charging fees for lateness. It also alleges that Ocwen failed to adequately respond to what is known under RESPA as a

"Qualified Written Request," i.e., a request for information.  Count II alleges defendants violated the Truth in Lending Act by failing to make certain disclosures to plaintiff about her loan.  Count III alleges that Ocwen wrongly reported one or more defaults on the mortgage to credit reporting agencies.  Counts IV through IX are variously named state law causes of action against all defendants.

## DISCUSSION

### I.  Standard on a Motion to Dismiss

The basis for evaluating a complaint challenged under Federal Rule of Civil Procedure 12(b)(6) is well established.  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).  A claim will be considered "plausible on its face" "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).  A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  Id. at 678 (internal quotation marks omitted).  When deciding a motion to dismiss, all factual allegations in the plaintiff's complaint are presumed to be true and viewed in a light most favorable to the plaintiff.  See Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d Cir. 1993).  Additionally, the Court may only consider "the complaint as well as 'any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference.'"  Alyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc., 742 F.3d 42 (2d Cir. 2014) (quoting Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001)).

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys. The Court is required to read the Plaintiff's *pro se* complaint liberally and interpret it raising the strongest arguments it suggests. See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197 (2007); Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173 (1980); Sealed Petitioner v. Sealed Defendant # 1, 537 F.3d 185, 191-93 (2d Cir. 2008).

## II. RESPA

"The purpose of RESPA is to 'insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.'" Kapsis v. Am. Home Mortg. Serv. Inc., 923 F. Supp. 2d 430, 444 (E.D.N.Y. 2013) (quoting 12 U.S.C. § 2601(a)). Plaintiff alleges that defendants violated RESPA by accepting charges for the rendering of real estate services that were different from the services actually performed under 12 U.S.C. § 2607(a). Plaintiff also alleges that defendants insufficiently responded to her Qualified Written Request ("QWR") regarding late fees that were charged to her account in 2012, under 12 U.S.C. § 2605. Defendants move to dismiss plaintiff's claim under § 2607, asserting it is time barred by a one-year limitations provision, and that, in any event, their response to the QWR was legally sufficient.

Although somewhat difficult to discern, plaintiff's allegation seems to be that defendants violated RESPA by charging her late fees and overcharges for her mortgage payments. Section 2607 provides that "no person shall accept any fee, kickback or thing of value . . . incident to or a part of a real estate settlement service involving a federally related mortgage loan." A settlement service includes any service provide in connection with a real estate settlement, such as title

searches, property surveys, and the origination of a federal mortgage loan. McAnaney v. Astoria

Fin. Corp., 357 F. Supp. 2d 578, 588 (E.D.N.Y. 2005) (citing 12 U.S.C.A. § 2602). It is not clear

that plaintiff's complaint adequately pleads a violation of 2607; her claim that defendants

charged her late fees is not the type of conduct generally covered under a settlement service.

However, even if it did, plaintiff's claim is time barred. Claims under section 2607 of

RESPA are subject to a one-year limitations period. See 12 U.S.C. § 2614. In a closed-end

transaction, such as a mortgage loan, "the date of accrual for the statute of limitations is the date

the plaintiff entered the loan agreement." Gorbaty v. Wells Fargo Bank, N.A., No. 10 Civ. 3291,

2014 WL 4742509, at *10 (E.D.N.Y. Sept. 23, 2014). Plaintiff's loan closed on September 14,

2006, so the limitations period on her claim expired a year later.

Plaintiff also alleges that there were deficiencies in response to her August 4, 2014 QWR

under Section 2605 of RESPA. Plaintiff's QWR requested documentation related to her loan

and asked questions about certain late fees she had been charged for untimely mortgage

payments. Defendants responded to plaintiff's QWR on August 15, 2014 and provided her with

documentation. Defendants said that they had conducted an investigation and were unable to

ascertain any specific errors in her account. They also objected to some of plaintiff's requests on

the basis that they were overbroad and beyond the scope of a QWR. Plaintiff sent a follow-up

letter on August 25, 2014, asserting that defendants had not met their obligations under RESPA.

Defendants responded to this letter shortly thereafter and provided additional details regarding

the alleged overcharges for plaintiff's late mortgage payments.

Plaintiff attached her first QWR and defendants' response to it to her complaint. She

attached her second QWR, along with defendants' response, to her Opposition to Defendants'

Motion to Dismiss. In deciding a motion to dismiss the Court may consider the facts stated in

the complaint, or in documents attached to the complaint as exhibits or incorporated in the

complaint by reference. Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

Plaintiff discusses the QWR she filed, as well as defendants' response in her complaint, and I

therefore deem incorporated into the complaint all attached correspondence relating to the

QWRs. Defendant argues that its response to the QWR was sufficient under RESPA.

Under § 2605(e), in responding to a QWR, defendants are obligated to:

(A) make appropriate corrections in the account of the borrower, including the
crediting of any late charges or penalties, and transmit to the borrower a written
notification of such correction (which shall include the name and telephone
number of a representative of the servicer who can provide assistance to the
borrower);

(B) after conducting an investigation, provide the borrower with a written
explanation or clarification that includes–

(i) to the extent applicable, a statement of the reasons for which the
servicer believes the account of the borrower is correct as determined by
the servicer; and
(ii) the name and telephone number of an individual employed by, or the
office or department of, the servicer who can provide assistance to the
borrower; or

(C) after conducting an investigation, provide the borrower with a written
explanation or clarification that includes–

(i) information requested by the borrower or an explanation of why the
information requested is unavailable or cannot be obtained by the servicer;
and
(ii) the name and telephone number of an individual employed by, or the
office or department of, the servicer who can provide assistance to the
borrower.

Defendant is correct.  In her QWR, plaintiff identified several issues she believed were

associated with her account, such as late fees.  Defendant Ocwen's reply letters clearly fulfilled

its statutory obligations under section 2605.  For example, late charges were posted to plaintiff's

account in July 2012 and August 2012.  Ocwen responded by explaining that plaintiff's loan

payment was due on the first of every month, but mortgagors were given a fifteen day grace period. Defendant Ocwen went on to explain that in July and August 2012, plaintiff's account had insufficient funds to pay the mortgage and the payment was returned to plaintiff's account with late charges. Defendant Ocwen responded to plaintiff's QWR comprehensively. Plaintiff has failed to state a claim that defendants violated section 2605.

## III. TILA

Congress enacted the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Plaintiff alleges that defendants violated TILA by failing to disclose certain charges to her, never disclosing that her Loan was securitized, and never giving her notice of her right to rescind. She therefore wishes to rescind her mortgage. Defendants argue that TILA does not apply to residential mortgage loans, and that the three year statute of limitations bars her claim.

TILA provides that a borrower whose loan is secured by her "principal dwelling" and has not been provided the required disclosures has the right to rescind her loan. See 15 U.S.C. § 1635(a). However, TILA does not apply to a residential mortgage transaction as defined by the statute. 15 U.S.C. § 1635(e); see also Eubanks v. Liberty Mortg. Banking Ltd., 976 F. Supp. 171, 174 (E.D.N.Y. 1997). Plaintiff's mortgage falls within the definition of a "transaction . . . to finance the acquisition . . . of a dwelling." 15 U.S.C. § 1602(x).

In Grimes v. Fremont General Corp., 785 F. Supp. 2d 269, 284-85 (S.D.N.Y. 2011), the plaintiffs sought to rescind their mortgage because they alleged they never received the required

rescission notices.  The court denied the plaintiffs' request because the "[a]mended Complaint and attached documents undisputedly establish that the funds Plaintiffs received from Fremont were used to finance the acquisition of the Newburgh home, and that Plaintiffs planned to, and did, use the home as their dwelling."  Id. at 284-85.  Plaintiff's complaint, as well as the mortgage plaintiff signed, both confirm that plaintiff intended to use the property as her dwelling.  Plaintiff's loan is not eligible for rescission under TILA.

Additionally, defendants' alleged failure to provide notice of the right to rescission does not change the statute of limitations.  17 U.S.C. § 1635(f).  There is a three year limitations period on the rescission remedy that begins to run upon the consummation of the transaction or sale of the property, whichever occurs first.  Id.  Plaintiff executed the mortgage on September 14, 2006; the statute of limitations had expired by September 14, 2009.  Even if plaintiff had stated a valid rescission claim, it would be time barred.

Plaintiff also alleges defendants violated Regulation Z in her complaint.  12 C.F.R. § 226.39.  Regulation Z, which contains amendments to TILA, requires the disclosure of certain information to a consumer who owns a mortgage property when the loan which the property secures is sold, assigned or otherwise transferred.  Boniel v. U.S. Bank, N.A., No. 12 Civ. 3809, 2013 WL 458298, at *5 (E.D.N.Y. Feb. 6, 2013).  Regulation Z was amended in 2009 to require these disclosures, but it is not retroactive.  Urbon v. JP Morgan Chase Bank, N.A., No. 12 Civ. 10303, 2013 WL 1144917, at *5 (D. Mass. Mar. 18, 2013).  Since the Trust to which the property was assigned was created in 2007, plaintiff has not stated a claim for a violation of Regulation Z.

Finally, any additionally claims plaintiff may wish to assert under TILA are also time-barred.  Section 1640(e) provides that "[a]ny action under this section may be brought . . . within

one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). It is well settled

that in "closed-end transactions," the "date of the occurrence of the violation" is no later than the

date the plaintiff enters the loan agreement. Granucci v. Wells Fargo Bank, N.A., No. 09 Civ.

4417, 2010 WL 5475613, at *2 (E.D.N.Y. Dec. 17, 2010). A closed-end transaction includes a

completed loan like a mortgage or a car loan. McAnaney v. Astoria Fin. Corp., No. 04 Civ.

1101, 2007 WL 2702348, at *6 (E.D.N.Y. Sept. 12, 2007). As noted above, plaintiff's mortgage

closed well over a year ago. Her TILA claims are time barred.

## IV. Fair Credit Reporting Act

Plaintiff alleges that defendants violated the Fair Credit Reporting Act ("FCRA") by

improperly reporting negative information to the Credit Reporting agencies. Section 1618s-2(b)

of the FCRA creates a private right of action – but only if "only if plaintiff shows that: (1) the

furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher

thereafter acted in willful or negligent noncompliance with the statute." Nguyen v. Ridgewood

Sav. Bank, 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014). Plaintiff has failed to meet these

requirements. Defendant Ocwen is considered a "furnisher of information" to consumer

reporting agencies. See Redhead v. Winston & Winston, P.C., No. 01 Civ. 11475, 2002 WL

31106934, at *3 (S.D.N.Y. Sept. 20, 2002). The duty to investigate under the FCRA only arises

when a plaintiff can show that a furnisher of information received information regarding a

consumer's credit directly from a reporting agency. Id. at *4; see also Prakash v. Homecomings

Fin., No. 05 Civ. 2895, 2006 WL 2570900, at *2-3 (E.D.N.Y. Sept. 5, 2006). Plaintiff asserts in

her response to defendants' motion to dismiss that she notified the credit agencies of a dispute in

June 2015 – several months after the complaint was filed. This does not matter. Plaintiff has

failed to show that Ocwen, a furnisher of information, received notice of a credit dispute from a credit reporting agency.

**V. Plaintiff's State Law Claims**

The decision whether to exercise supplemental jurisdiction is within the discretion of the district court. See Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90 (2d Cir. 1998). In doing so, the district court should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614 (1988). One of the grounds for declining supplemental jurisdiction, specifically listed in 28 U.S.C. § 1367, is where the district court has dismissed the claims over which it has original jurisdiction. The Second Circuit has indicated that generally, "if federal claims are dismissed before trial . . . the state claims should be dismissed as well." Castellano v. Bd. Of Trustees, 937 F.2d 752, 758 (2d Cir. 1991). Plaintiff's claims for intentional misrepresentation, unjust enrichment, civil conspiracy, wrongful foreclosure intentions, cancellation of her mortgage, and an action to quiet title, are all state law claims and neither judicial economy, convenience, fairness, nor comity weighs in favor of retaining them. I therefore decline to exercise supplemental jurisdiction over plaintiff's state law claims.

## CONCLUSION

Defendants' motion to dismiss is granted as to plaintiff's federal claims. Her state claims

are dismissed without prejudice. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       November 21, 2015